IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-02546-WYD-CBS

MARK ALAN STREPKA,
        Plaintiff,
v.

MATTHEW SAILORS, individually and in his official capacity as Police Officer for the City
of Sheridan, Colorado, and
MIKE WILLIAMS, individually and in his official capacity as Police Officer for the City of
Sheridan, Colorado,
        Defendants.
_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on: (1) "Plaintiff's Second Summary
Judgment Motion" (filed February 26, 2007) (doc. # 66); (2) Defendant "Sailors' Motion for
Summary Judgment" (filed February 28, 2007) (doc. # 71); and (3) Defendant "Williams'
Motion for Summary Judgment" (filed February 28, 2007) (doc. # 73).  Pursuant to the
Order of Reference dated March 22, 2006 (doc. # 11) and the memoranda dated February
26, 2007 (doc. # 69) and March 1, 2007 (doc. # 75), these matters were referred to the
Magistrate Judge.  The court has reviewed the pending motions, Strepka's "Combined
Response to Defendants' Cross-Summary Judgment Motions" (filed March 19, 2007) (doc.
# 77), "Defendants' Opposition to Plaintiff's Second Summary Judgment Motion" (filed
March 30, 2007) (doc. # 81), "Defendants' Combined Reply in Support of Motion for
Summary Judgment" (filed April 6, 2007) (doc. # 83), "Defendants' Notice of Supplemental
Authority in Support of Motions for Summary Judgment" (filed April 20, 2007) (doc. # 88),
Strepka's "Reply Brief . . ." (filed May 1, 2007) (doc. # 89), the affidavits and exhibits, the
entire case file, and the applicable law and is sufficiently advised in the premises.

I.     Statement of the Case

Proceeding *pro se*, Strepka commenced this civil action while he was incarcerated at the Delta Correctional Center in Delta, Colorado.  (*See* Complaint (doc. # 3)).  Strepka has since been released from the Delta Correctional Center.  (*See* "Plaintiff's Change of Address Notice" (doc. # 82)).  In a single claim for relief, Strepka alleges pursuant to 42 U.S.C. § 1983 that Defendants violated his Fourth Amendment rights on December 20, 2003 in the City of Sheridan, Colorado.  Strepka alleges that after he parked his vehicle in front of his destination, Defendants accused him of speeding and driving under the influence of an alcoholic beverage.  Strepka alleges that he was arrested and his personal property was searched and seized without probable cause or a warrant.  Strepka alleges that the resultant criminal charges brought against him in Arapahoe County Court for possession of a schedule II controlled substance were subsequently dismissed.  As relief, Strepka seeks compensatory damages, punitive damages in the amount of $2,500,000.00, "exemplary damages which would equate to the above requested punitive damages, . . . retained Attorney fees and costs." (*See* Complaint (doc. # 3) at p. 8).

Strepka has moved for summary judgment on his Complaint.  Defendants Sailors and Williams have also moved for summary judgment on the Complaint.

II.     Standard of Review

Summary judgment is proper under Fed.R.Civ.P. 56(c) when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In applying the standard, the court reviews the pleadings and documentary evidence in the light most favorable to the non moving party. To defeat a properly supported motion for summary judgment, there must be evidence upon which the jury could reasonably find for the plaintiff. Judgment as a matter of law is improper unless the evidence and all inferences to be drawn therefrom are so clear that reasonable minds could not differ as to the conclusion. Speculation, supposition and unsupported factual allegations will not establish an issue of material fact necessitating trial.

*Lee v. Board of County Com'rs of Arapahoe County, Colorado*, 18 F. Supp. 2d 1143, 1156

(D. Colo. 1998) (internal quotation marks and citations omitted)

> Defendants have raised the defense of qualified immunity.
>
> In order to promote the efficient administration of public services, the doctrine of qualified immunity shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.  Qualified immunity is an affirmative defense to a section 1983 action, providing immunity from suit from the outset.  Once a defendant asserts qualified immunity as a defense, the plaintiff must carry the burden of showing qualified immunity is not proper under the circumstances.  To do this, the plaintiff must show that (1) the defendant's conduct violated a constitutional right and (2) the law governing the conduct was clearly established at the time of the alleged violation.

*DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (internal quotation marks and citations omitted).  Although the court "will review the evidence in the light most favorable to the nonmoving party, the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity." *Martinez v. Carr*, 479 F.3d 1292, 1295 (10th Cir. 2007) (quoting *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001)).


III.    Analysis

A.    Undisputed Facts

At approximately 10:30 p.m. on December 20, 2003, Defendant Sailors was on duty in his capacity as an officer of the Sheridan Police Department.  While Sailors was parked in his patrol car "facing the intersection South Kenyon Blvd. and South Lowell Blvd.," he observed a driver later identified as Mr. Strepka traveling southbound in a red hatchback "well over the posted 25 mile per hour speed limit."  (Sailors Affidavit (doc. # 72-2) at ¶ 2; *see also* "Addendum II: Exhibits to Plaintiff's Second Summary Judgment Motion" (doc. # 66-3 at p. 2 of 18) ("I observed a red, small hatchback traveling S/B on S. Lowell Blvd. at

a visually estimated speed of 50 MPH in the posted 25 MPH zone")).[1]   Sailors followed Strepka's car as Strepka "made a fast turn" east onto W. Milan Ave. from S. Lowell Blvd. (Sailors Affidavit at ¶ 3; Strepka Deposition (doc. # 72-3) at p. 83).   Strepka parked on W. Milan Ave. and Sailors parked behind him.  (Sailors Affidavit at ¶ 3; Strepka Deposition at p. 85).   Sailors observed Strepka step out of the vehicle, then withdraw back into the vehicle and begin dialing his cell phone.  (Sailors Affidavit at ¶ 4; Strepka Deposition at p. 87).  Sailors approached Strepka's car, knocked on the driver's side window, and asked for Strepka's driver's license and vehicle registration.  (Sailors Affidavit  at ¶ 5; Strepka Deposition at pp. 87-93).  After initially refusing to respond to Sailors, Strepka then rolled down his window three to four inches and told Sailors he was on the phone.  (Sailors Affidavit at ¶¶ 4-5; Strepka Deposition at pp. 90-93).   Strepka provided his license and registration after three or four requests by Sailors.  (Sailors Affidavit at ¶ 5; Strepka Deposition at pp. 90-93).  Officers Williams and Talty arrived as Sailors was asking Strepka for his license and registration.  (Williams Affidavit (doc. # 72-4) at ¶ 3;  Sailors Affidavit at ¶ 6;  Strepka Deposition at p. 93).

Strepka's behavior was "angry and erratic and [he] continued to refuse to respond to our efforts to speak to him, or our requests for his license, registration, and proof of insurance, stating that he 'would be with us in a while.' " (Williams Affidavit at ¶ 4; Sailors Affidavit at ¶¶ 6-7;   Strepka Deposition at pp. 90-93, 99-100, 102, 110); *see also* "Addendum III: Exhibits to Plaintiff's Second Summary Judgment Motion" (doc. # 66-4 at p. 2 of 18).  Officers Sailors and Williams noticed a light odor of an alcoholic beverage coming from the vehicle and that Strepka had bloodshot, watery eyes in addition to his odd behavior.  (Williams Affidavit at ¶ 5;  Sailors Affidavit at ¶ 7).  Officers Sailors, Williams, and Talty went to Strepka's vehicle and informed him he had been pulled over for

---

[1]   Strepka disputes this fact, stating that according to his speedometer, he was traveling exactly 25 miles per hour.  (Strepka Deposition (doc. # 72-3) at p. 73).

speeding.  (Strepka Deposition at pp. 104-5).   Officers Sailors and Williams ordered Strepka to stop talking on his cell phone and get out of his car.  (Williams Affidavit at ¶ 6; Sailors Affidavit at ¶¶ 8-9;  Strepka Deposition  at p. 102).  Strepka refused to consent to any sobriety tests.  (Williams Affidavit  at ¶ 6;  Sailors Affidavit at ¶ 8;  Strepka Deposition at p. 105).  After initially refusing, Strepka eventually got out of his car.  (Williams Affidavit at ¶ 7;  Sailors Affidavit at ¶ 9;  Strepka Deposition at p. 103).

The officers asked Strepka if he had been drinking.  After initially denying that he had been drinking, Strepka then stated that he had one beer.  (Williams Affidavit at ¶ 6; Sailors Affidavit at ¶ 8;  Strepka Deposition at pp. 106-07).  When Williams shone his flashlight in Strepka's face to look for signs of intoxication, Strepka reached for the flashlight.  (Williams Affidavit at ¶ 7;  Sailors Affidavit at ¶ 9;  Strepka Deposition at p. 103; "Addendum III: Exhibits to Plaintiff's Second Summary Judgment Motion" (doc. # 66-4 at p. 2 of 18).  At that time Sailors restrained Strepka's hands behind his back and conducted a patdown search of Strepka's clothing for the purpose of officer safety.  (Williams Affidavit at ¶ 9;  Sailors Affidavit at ¶ 11;  Strepka Deposition at pp. 108-09).  Sailors questioned Strepka about a small bundle located in an inside jacket pocket.  (Williams Affidavit at ¶ ¶ 9-10;  Sailors Affidavit at ¶ 11;  Strepka Deposition at pp. 110-11).  Strepka first denied that his jacket had an inside pocket and then stated that he had a battery and a book in that pocket.  (Williams Affidavit at ¶¶ 10-11;  Sailors Affidavit at ¶ 12;  Strepka Deposition at p. 110-11).   In response to Sailors' order not to put his hand in his inside pocket, Strepka pushed Sailors hand away and reached inside the pocket.  (Williams Affidavit at ¶¶ 11-12;  Sailors Affidavit at ¶¶ 12-13;  Strepka Deposition at p. 112).  Strepka was then informed that he was under arrest and placed in handcuffs.  (Williams Affidavit at ¶ 12; Sailors Affidavit at ¶¶ 13-14;  Strepka Deposition at p. 113).  In Strepka's inside pocket, Sailors discovered eight plastic baggies of what was later identified as crystalline methamphetamine.  (Williams Affidavit at ¶ 13;   Sailors Affidavit at ¶ 14;   Strepka

Deposition at p. 113).  Pursuant to the arrest, Williams searched the interior of Strepka's car.  (Williams Affidavit at ¶ 14).  Strepka was charged pursuant to Colo. Rev. Stat. § 18-18-405 with unlawful possession of a controlled substance.  (Williams Affidavit at ¶ 13; Sailors Affidavit at ¶ 14).  The charge was dismissed on February 24, 2005.  (Complaint at p. 3).

B.     Sailors' Motion for Summary Judgment

Title 42 U.S.C. § 1983 provides a civil cause of action for individuals who are deprived of "any rights, privileges, or immunities secured by the Constitution and laws" by a person acting "under color of law."  *Adickes v. SH Kress & Co.*, 398 U.S. 144, 147, 150 (1970).  Strepka alleges pursuant to 42 U.S.C. § 1983 that Defendants violated his Fourth Amendment rights on December 20, 2003 by detaining him without reasonable suspicion and arresting him without probable cause.

1.     Traffic Stop

The Fourth Amendment protects "[t]he right of the people to be secure . . . against unreasonable searches and seizures." U.S. Const. amend. IV.  While "not all police-citizen encounters implicate the Fourth Amendment," *United States v. King*, 990 F.2d 1552, 1556 (10th Cir. 1993), "[w]here a police-citizen encounter rises to the level of a seizure within the meaning of the Fourth Amendment, such seizure must be reasonable to be valid." *Gallegos v. City of Colorado Springs*, 114 F.3d 1024, 1028 (10th Cir. 1997) (citing *United States v. Sharpe*, 470 U.S. 675, 682 (1985) (Fourth Amendment prohibits unreasonable seizures)).  "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of" the Fourth Amendment.  *United States v. Ramstad*, 308 F.3d 1139, 1144 (10th Cir. 2002) (quoting *Whren v. United States*, 517 U.S. 806, 809-10

(2002)).  "However, mere investigatory detentions of persons may require less than probable cause to be reasonable."  *Gallegos*, 114 F.3d at 1028.   "Under Tenth Circuit precedent, routine traffic stops are considered akin to the investigatory stops sanctioned by the Supreme Court in *Terry v. Ohio*."  *Ramstad*, 308 F.3d at 1144 (citations omitted). "In *Terry v. Ohio*, 392 U.S. 1, 21 (1968), the Supreme Court held police officers can temporarily detain an individual suspected of criminal activity if the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' "  *Gallegos*, 114 F.3d at 1028.  Defendants do not dispute that the initial stop of Strepka was a *Terry* investigative detention implicating the Fourth Amendment.

"[A] traffic stop would be 'valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring.' "  *United States v. Bustillos-Munoz*, 235 F.3d 505, 512 (10th Cir. 2000) (quoting *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (*en banc*)).  "Consequently, a traffic stop is reasonable under the Fourth Amendment at its inception if the officer has either (1) probable cause to believe a traffic violation has occurred or (2) a reasonable articulable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction."  *Ramstad*, 308 F.3d at 1144 (internal quotation marks and citation omitted).  *See also United States v. Callarman*, 273 F.3d 1284, 1286 (10th Cir. 2001) ("[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring.") (quotation omitted);  *Botero-Ospina*, 71 F.3d at 788 ("Our sole inquiry is whether this particular officer had reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction") (citation and quotation marks omitted).

Even if it is determined upon investigation that the observed act is not a violation of the law, the stop is constitutionally permissible as long as the officer had objective, reasonable suspicion to believe a crime was occurring.  *Callarman*, 273 F.3d at 1287.  With these legal principles in mind, the court turns to the facts of this case.

Based on his experience and training, Sailors concluded by observation that Strepka was speeding and thus committing a traffic violation.  (*See* Sailors Affidavit (doc. # 72-2) at ¶ 2;  "Addendum II: Exhibits to Plaintiff's Second Summary Judgment Motion" (doc. # 66-3 at p. 2 of 18)).  Such an observation is the only requirement for a valid stop under the Fourth Amendment.  *See Botero-Ospina*, 71 F.3d at 787.

However, Strepka offers his testimony that he was driving exactly 25 miles per hour when Sailors observed him.  (Strepka Deposition (doc. # 72-3) at p. 73).  Strepka's testimony is unequivocal.  *Compare Valance v. Wisel*, 110 F.3d 1269, 1275-76 (7th Cir. 1997) (testimony of plaintiff in civil rights indicated only that plaintiff "does not currently "believe" he committed a traffic violation; plaintiff's "less than definitive knowledge does not cast sufficient doubt on what the officer reasonably believed at the time").  In *Valance*, plaintiff's

> current belief is somewhat inconsistent with the statements he made to Officer Wisel at the time of the stop.  According to the officer, Valance indicated that he was tired and that he could understand how he may have gone left of center.  Valance does not deny that this is what he told Wisel when stopped.  Although he cannot remember precisely what was said, Valance admits to implying that he was groggy and that he may not have been paying attention.  It is thus undisputed that Valance indicated to Wisel that he really did not know whether he had crossed the center line but that he could understand how he may have done so.  Yet he now is insisting that he does not believe he ever crossed the center line.  We think a reasonable jury could only take from all of this that Valance really does not know one way or the other.  Thus, his evidence does not rebut that proffered by the officer.

110 F.3d at 1276.

Sailors argues that in observing that Strepka was exceeding the 25 mile per hour speed limit, he could have mistakenly concluded "that Plaintiff was traveling at least 26

miles per hour, when Plaintiff's actual speed was 25 miles per hour." (Sailors' Motion at p. 10). "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to qualified immunity." *Cortez v. McCauley*, 478 F.3d 1108, 1120 (10th Cir. 2007) (citation omitted). The Supreme Court has recognized that "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials - like other officials who act in ways they reasonably believe to be lawful - should not be held personally liable." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Qualified immunity leaves "ample room for mistaken judgments," protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Therefore, when a warrantless arrest or seizure is the subject of a § 1983 action, the defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff." *Cortez*, 478 F.3d at 1120.

However, there is no evidence before the court that Strepka was traveling 26 miles per hour or that Sailors believed that Strepka was traveling 26 miles per hour. Whether the detention of Mr. Strepka was justified at its inception is an issue of disputed fact that remains to be determined at a later stage of this litigation. (*See, e.g.,* Defendants' Opposition to Plaintiff's Second Summary Judgment Motion (doc. # 81) at pp. 10-11 ('there are disputed facts concerning whether Plaintiff was speeding on Lowell Blvd.). "When there are unresolved disputes of historical fact relevant to whether the officer had probable cause and to what information he possessed -- and thus to whether he may properly claim qualified immunity, a court may not grant summary judgment based on qualified immunity because the officer would not have shown that no genuine dispute exists as to material fact." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312-13 (10th Cir. 2002) (citation omitted).

C.      Williams' Motion for Summary Judgment

Even if the court rejects at this time Sailors' argument for qualified immunity regarding the initial traffic violation, Williams is entitled to qualified immunity on Strepka's Complaint.

Officers may rely on information furnished by other law enforcement officials to establish reasonable suspicion and probable cause for an arrest.  *Albright v. Rodriguez*, 51 F.3d 1531, 1536 (10th Cir. 1995) (citations omitted).  *See also Hollingsworth v. Hill*, 110 F.3d 733, 738 (10th Cir.1997) (to be entitled to qualified immunity, officer had to show only that his actions were objectively reasonable in light of the information he possessed at the time of his actions).  There is no evidence in the record that Williams had any reason to doubt Sailors' version of the initial speeding violation.  Consequently, even if the court concludes that Sailors is not entitled to qualified immunity at this time for initially detaining Strepka, Williams could rely on Sailors' statement that Strepka was speeding in deciding to conduct field sobriety tests and arrest Strepka.  *See  Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (officer may base probable cause on information received from others absent showing information was untrustworthy).  Given the information received from Sailors, Williams' belief that reasonable suspicion or probable cause existed to stop Strepka's vehicle was objectively reasonable as a matter of law.


1.      Scope of Stop and Probable Cause for Arrest

During a routine traffic stop a police officer may ask questions, request and examine a driver's license and vehicle documentation, and run such computer verifications as necessary to determine that the driver has a valid license and is entitled to operate the vehicle. *United States v. Wood*, 106 F.3d 942, 945 (10th Cir. 1997).  *See also United States v. Mendez*, 118 F.3d 1426, 1429 (10th Cir. 1997) ("An officer conducting a routine traffic stop may run computer checks on the driver's license, the vehicle registration

papers, and on whether the driver has any outstanding warrants or the vehicle has been reported stolen") (citations omitted).  "The officer may detain the driver and his vehicle as long as reasonably necessary to make these determinations and to issue a citation or warning."  *Wood*, 106 F.3d at 945.  "Further questioning is permissible only if (1) the encounter between the officer and the driver ceases to be a detention, but becomes consensual, and the driver voluntarily consents to additional questioning, or (2) during the traffic stop the officer gains a reasonable and articulable suspicion that the driver is engaged in illegal activity."  *Mendez*, 118 F.3d at 1429-30 (internal quotation marks and citations omitted).  *See also United States v. Villa-Chaparro*, 115 F.3d 797, 801 (10th Cir. 1997) ("An investigative detention may be expanded beyond its original purpose . . . if during the initial stop the detaining officer acquires reasonable suspicion of criminal activity") (internal quotation marks and citation omitted).

"Formal arrests or seizures that resemble formal arrests must be supported by probable cause to be reasonable" under the Fourth Amendment.  *Gallegos*, 114 F.3d at 1028 (citation omitted).  "A police officer violates an arrestee's clearly established Fourth Amendment right to be free of unreasonable seizure if the officer makes a warrantless arrest without probable cause."  *Olsen*, 312 F.3d at 1312-13 (citation omitted).

"In the context of a warrantless arrest in a § 1983 action, th[e] court must grant a police officer qualified immunity 'if a reasonable officer could have believed that probable cause existed to arrest the plaintiff.' "  *Olsen*, 312 F.3d at 1312 (quoting *Romero*, 45 F.3d at 1476).  "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense."  *Olsen*, 312 F.3d at 1312 (internal quotation marks and citation omitted).  "The primary concern is whether a reasonable officer would have believed that probable cause existed to arrest the defendant based on the information possessed by the [arresting]

offic[er]."   *Olsen*, 312 F.3d at 1312 (internal quotation marks and citation omitted). "Probable cause is based on the totality of the circumstances . . . ."   *Cortez*, 478 F.3d at 1116 (10th Cir. 2007).

Here, Strepka refused to roll down his window to speak to Sailors and refused to respond to Sailors' request for his driver's license and vehicle documentation.   Three officers observed that Strepka's behavior was angry and erratic.   After initially denying that he had been drinking, Strepka then stated that he had one beer.   Strepka refused to consent to any sobriety tests.   Strepka grabbed at Williams' flashlight.   Officers Sailors and Williams both noticed a light odor of an alcoholic beverage coming from the vehicle and that Strepka had bloodshot, watery eyes in addition to his unusual behavior.   Upon a patdown search of Strepka's clothing, Strepka initially denied that his jacket had an inside pocket and then stated that he had a battery and a book in that pocket.   In response to Sailors' order not to put his hand in his inside pocket, Strepka pushed Sailors' hand away and reached inside the pocket.   These circumstances provided probable cause to arrest Strepka for driving under the influence of alcohol or drugs, among other things.   *See, e.g., Schmerber v. California*, 384 U.S. 757, 768-69 (1966) (probable cause for arrest existed when driver's breath smelled from alcohol and driver's eyes were bloodshot, watery, and glassy);   *Summers v. State of Utah*, 927 F.2d 1165, 1166 (10th Cir. 1991) (plaintiff's operation of his vehicle, the scent of alcohol emanating from his vehicle, and plaintiff's refusal to take a field sobriety test provided probable cause for arrest).   Based on the totality of the circumstances, Defendant Williams had probable cause to believe that Strepka was involved in criminal activity and acted reasonably in arresting Mr. Strepka.

2.      Search of Strepka's Vehicle

Pursuant to Strepka's arrest, Williams searched the interior of Strepka's car.   The

Tenth Circuit has "held that officers may validly search a vehicle in which the arrestee was a recent occupant as a search incident to arrest." *United States v. Franco*, 981 F.2d 470, 473 (10th Cir. 1992) (citation omitted). "Such a search is permissible notwithstanding the fact that the arrestee is out of the automobile and under the control of the officer." *Franco*, 981 F.2d at 473. Strepka "was a recent occupant of his vehicle and the arrest was made in close proximity to his vehicle." *Franco*, 981 F.2d at 473. Here, the undisputed evidence shows that the search of Strepka's vehicle, conducted contemporaneously with Strepka's lawful arrest, was reasonable.

3.     Punitive Damages

Defendants move to dismiss Strepka's claim for punitive damages. Strepka has not responded to Defendants' argument. (*See* Strepka's Combined Response (doc. # 77)).

While available in § 1983 actions, "punitive damages are to be awarded only when 'the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.' " *Jolivet v. Deland*, 966 F.2d 573, 577 (10th Cir. 1992) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). "Punitive damages become a discretionary matter for the jury in a section 1983 action only if the plaintiff makes an adequate threshold showing." *Iacobucci v. Boulter*, 193 F.3d 14, 26-27 (1st Cir. 1999). That threshold showing "requires proof that the defendant acted 'in the face of a perceived risk that [his] actions [would] violate federal law.' " *Iacobucci*, 193 F.3d at 26 (quoting *Kolstad v. American Dental Ass.*, 527 U.S. 526, 536 (1999)). "To make out a jury question on punitive damages under this subjectively oriented test, [Strepka] needed to adduce evidence sufficient to prove that [Defendants] arrested him in the face of a perceived risk that doing so would violate [his] federally assured rights." *Iacobucci*, 193 F.3d at 26. Here, the complete lack of evidence in the record, either direct or circumstantial, as to Defendants' evil motives or reckless

13

indifference to Strepka's federally protected rights, defeats the claim for punitive damages as a matter of law.

D.      Strepka's Motion for Summary Judgment

Strepka argues that his Fourth Amendment rights were violated because the alleged speeding violation occurred outside the city limits of the City of Sheridan and thus outside the jurisdiction of the Defendants.  Strepka's argument fails for several reasons.

First, the caselaw cited by Strepka does not support summary judgment in his favor. Strepka cites *Svaldi v. City of Lakewood*, 536 P.2d 331 (Colo. App. 1975) (holding that where "the northbound lane of Sheridan Boulevard is not within Lakewood's boundaries, the Lakewood municipal court is without jurisdiction over traffic offenses committed there"). However, the evidence in this case indicates that Strepka was traveling in the southbound lane of Sheridan Boulevard.  Further, "[a] police officer is authorized to make an arrest outside of his or her jurisdiction in limited circumstances," including "when an officer is in fresh pursuit of an alleged offender and 'the officer has reasonable grounds to believe that the alleged offender has committed a criminal offense. . . .' " *People v. McKay*, 10 P.3d 704, 706 (citing Colo. Rev. Stat. § 16-3-106 (1999)).  The Colorado Court of Appeals interpreted "'reasonable grounds'. . . to mean that a police officer in fresh pursuit can only make an extra-territorial warrantless arrest if, at the time the pursued party crosses the territorial boundary, the officer has 'probable cause' to believe a crime has been committed." *McKay*, 10 P.3d at 706 (citation omitted).  Here, the evidence is disputed whether Sailors had probable cause to believe that a crime was committed in his presence when he observed a driver later identified as Mr. Strepka traveling southbound in a red hatchback at approximately 50 miles per hours in a posted 25 miles per hour zone.  At this stage of the litigation, summary judgment in favor of Strepka is not appropriate.

Second, the evidence demonstrates that Defendants reasonably relied on legal

determinations that "it is proper for Sheridan police to patrol and enforce the law" in "the southbound lane of Lowell Blvd. near its 3600 block." (Affidavit of James S. Kimmel (doc. # 81-4) at ¶ 3; Affidavit of Dave Runco (doc. # 81-5) at ¶ 2).

Third, even if the legal determination of jurisdiction were incorrect and there were any Fourth Amendment violation, Defendants would be entitled to qualified immunity because an objectively reasonable officer would not have known that his conduct was unlawful. *See V-1 Oil v. Wyoming Dept. of Environmental Quality*, 902 F.2d 1482, 1489 (10th Cir. 1990) (circumstances barred "imputation to [the defendant] of constructive knowledge concerning the laws allegedly violated by his conduct") (citation omitted). Further, it is undisputed that Defendants' only contacts with Strepka occurred within the city limits of the City of Sheridan. (*See* Strepka Deposition at p. 83).

Strepka further alleges that he was coerced and not advised of his rights in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). (*See* Strepka's Motion at pp. 19-21). Strepka has not alleged a claim in his Complaint based upon a violation of his constitutional rights under *Miranda* and he may not raise a new claim in a motion for summary judgment after the conclusion of discovery. Nor is there legal authority for civil liability of the Defendants based on this allegation. *See DeYonghe v. Ward*, 121 Fed. Appx. 335, 342 n. 6 (10th Cir. Jan 26, 2005) (citing *Chavez v. Martinez*, 538 U.S. 760, 769 (2003) (plurality opinion); *Robinson v. Gunja*, 92 Fed. Appx. 624, 627 (10th Cir. Feb. 4, 2004) (citing *Chavez*, 538 U.S. at 760). "[A] violation of the constitutional right against self-incrimination occurs only if one has been compelled to be a witness against himself in a criminal case." *Chavez*, 538 U.S. at 770. Any statements made by Strepka were not admitted against him in a criminal case. To the extent that Strepka is alleging a Fifth Amendment Claim, such claim fails.

Strepka's remaining arguments for summary judgment are foreclosed by the court's analysis in parts III. B. and C. of this Recommendation.

E.     Liability of City of Sheridan under Section 1983

Strepka suggests in his Motion that the City of Sheridan has a custom or policy "to perfect out-of-jurisdiction traffic stops of vehicles." (*See* Strepka's Motion at p. 1; *see also* p. 6 ("These types of actions performed by the Defendant Officers, are the types of action that depict a Municipal "policy or custom").

The Supreme Court held in *Monell v. New York City Dept. of Social Servs.* that municipalities and other local governmental bodies are "persons" within the meaning of 42 U.S.C. § 1983.  436 U.S. 658, 689 (1978).  "[I]n *Monell* and subsequent cases, we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bryan County v. Brown*, 520 U.S. 397, 403 (1997) (citations omitted).  "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bryan County*, 520 U.S. at 403-04 (citation omitted).

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.  The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bryan County*, 520 U.S. at 404.  To warrant liability, the alleged policy must be a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the public entity's officers.  *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir. 1996) (internal quotation marks and citation omitted).  A decision that "was a 'course of action consciously chosen from among various alternatives'" generally implies a policy. *J.B. v. Washington County*, 127 F.3d 919, 924 (10th Cir. 1997).  "If a violation cannot be characterized as official policy, then [a municipality may] still be held liable if the practice is so permanent and well-settled as to constitute a custom or usage with the force of law." *Lankford*, 73 F.3d at (internal quotation marks and citations omitted).  "In order to establish

a custom, the actions must be persistent and widespread . . . practices of [city] officials."
*Lankford*, 73 F.3d at (internal quotation marks and citations omitted).

First, Strepka has not alleged a claim in his Complaint based upon an unconstitutional municipal policy and a new claim is not properly raised in a motion for summary judgment after the close of discovery.

Second, Strepka fails to allege or offer evidence that the City of Sheridan's policies or customs were unconstitutional. To find municipal liability under *Monell* for civil rights violations under 42 U.S.C. § 1983, plaintiffs must prove that the defendants have customs or policies which amount to deliberate indifference to their constitutional rights and that these policies are the moving force behind the constitutional violations. *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989). That is, under *City of Canton*, plaintiffs must prove that the official policy was "deliberately indifferent" to their constitutional rights. "This occurs when the need for more or different action 'is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." 489 U.S. at 390.

Strepka's suggestion of municipal liability is merely conclusory. Strepka alleges only that the actions of the Defendant Officers were unlawful. Strepka alleges no direct causal link between any action of the City of Sheridan and any constitutional violation. *See Hollingsworth*, 110 F.3d at 742 ("to establish municipal liability a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged") (internal quotation marks and citations omitted). Strepka has not alleged or shown any pattern of out-of-jurisdiction traffic stops of vehicles other than his vehicle. Strepka has not alleged that the City of Sheridan may be held constitutionally liable under § 1983 for failing to properly train its employees and officers. *See City of Canton*, 489 U.S. at 387 ("inadequacy of police training may serve as the basis

for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact").

The court has determined, above, that the evidence demonstrates that Defendants reasonably relied on legal determinations that "it is proper for Sheridan police to patrol and enforce the law" in "the southbound lane of Lowell Blvd. near its 3600 block." (Affidavit of James S. Kimmel (doc. # 81-4) at ¶ 3; Affidavit of Dave Runco (doc. # 81-5) at ¶ 2). "[T]he City [of Sheridan] cannot be held liable where, as here, the officers did not commit a constitutional violation." *Trigalet v. City of Tulsa, Oklahoma*, 239 F.3d 1150, 1155-56 (10th Cir. 2001). *See also Ricciuti v. New York City Transit Authority*, 124 F.3d 123, 132 (2d Cir. 1997) ("a claim of inadequate training and supervision under § 1983 cannot be made out against a supervisory body without a finding of a constitutional violation by the persons supervised") (citation omitted).

In sum, Strepka has not sufficiently alleged or established an official custom or policy of "out-of-jurisdiction traffic stops" in violation of § 1983 by the City of Sheridan.

Accordingly, IT IS RECOMMENDED that:

1.      Defendant "Sailors' Motion for Summary Judgment" (filed February 28, 2007) (doc. # 71) be GRANTED as to Strepka's claim for punitive damages and DENIED in all other respects.

2.      Defendant "Williams' Motion for Summary Judgment" (filed February 28, 2007) (doc. # 73) be GRANTED, judgment on the Complaint enter in favor of Defendant Williams and against Plaintiff Strepka with each party to pay his own attorney fees and costs, and Defendant Williams be dismissed from this civil action.

3.      "Plaintiff's Second Summary Judgment Motion" (filed February 26, 2007) (doc. # 66) be DENIED.

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).

The district judge shall make a *de novo* determination of those specific portions of the proposed findings or recommendations to which specific objection is made.  28 U.S.C. § 636(b)(1).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  *See In re Griego*, 64 F.3d at 583;  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  28 U.S.C. § 636(b)(1).

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *One Parcel of Real Property*, 73 F.3d at 1060.  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (district court's decision to review a magistrate's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *International Surplus Lines Insurance Co. v.*

*Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 2nd day of May, 2007.

BY THE COURT:

\_\_\_s/Craig B. Shaffer_____
United States Magistrate Judge